UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

York Enterprises, LLC

        Debtor.

_____/ /

Case No.: 14-00628
Chapter 11 – Filed: 2/06/2014
Converted – Chapter 7: 11/13/2014

### TRUSTEE'S MOTION FOR SALE OF THREE CONDO UNITS AND PERSONAL PROPERTY, FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. § 363 WITH COURTROOM AUCTION

**NOW COMES** Stephen L. Langeland, Trustee ("Trustee"), by and through his attorneys, Rayman & Knight, and for his Motion for Sale of Three Condo Units and Personal Property, Free and Clear of Liens Pursuant to 11 U.S.C. § 363, With Courtroom Auction ("Motion"), says as follows:

### JURISDICTION

1. That jurisdiction over this case and proceeding exist in this Court under 28 U.S.C. §1334(a) and (b) and by reference from the District Court in accordance with 28 U.S.C. §157(a). Determination of this Motion is a core proceeding, as defined in 28 U.S.C. §157(b), arising under the United States Bankruptcy Code (11 U.S.C. §101 *et seq.*, "Bankruptcy Code"). Venue of this Motion is properly placed in this Court pursuant to 28 U.S.C. §1409(a).

### BACKGROUND

2. That on February 6, 2014 ("Petition Date") York Enterprises, LLC ("Debtor") filed a Chapter 11 Bankruptcy which was converted to a Chapter 7 proceeding on November 13, 2014.

3. That the Trustee is the Trustee with respect to the above-captioned matter.

4. The Trustee has received an offer from Casa Nirvana, LLC ("Purchaser") to

purchase condominium units 21, 22 and 60 ("Units") for the sum of $70,000.00 each and $12,000.00 for the personal property of what was known as the Channel Bar, excluding alcoholic beverages and any liquor license ("Personal Property"). (*See*, Exhibit "A").

5. The Purchaser is not an insider and the purchase price was reached by negotiations between the parties after a lengthy marketing period.

6. The total sale price is $222,000.00 and will be subject to competitive bidding.

## LIEN HOLDERS

7. The sale of the Units and Personal Property shall be deemed free and clear of liens pursuant to 11 U.S.C. §363(f).

8. This motion seeks to have the sale free and clear of the liens of the following secured creditors, which claims or are known to have a lien in the property subject to sale: Van Buren County, City of South Haven, Comerica Bank and Old Harbor Village Condo Association ("Lien Holders") for the reasons described herein.

## AUCTION PROCESS

9. **That the sale of the Units and the Personal Property (collectively "Property") shall be sold "<u>As Is, Where Is</u>", with the Trustee making no representations, warranties, statements or promises with respect to the same, including, but not limited to, description, fitness for purpose, merchantability, quantity, the conditions or the quality of any matter or thing whatsoever, with any and all conditions and warranties expressed or implied by law being deemed not to apply to the sale of the Property.**

10. **The Purchaser or any successful bidder shall take the Property with all of its faults.**

11. An auction of the Property will be held **at the hearing scheduled for this Motion.**

Any party desiring to place a bid must be present at the hearing and be prepared to bid.

12.     The Trustee will take bids for Units separately, beginning with an opening bid of $71,000.00 for each.

13.     After bidding is concluded on each Unit separately, the Trustee will seek bids on all of the Units in such lots as parties may desire or the Trustee deems appropriate.

14.     The Personal Property will be sold to the purchaser of units 20 and 21; as such, prospective purchasers will be asked to pay an additional $6,000.00 for each of these units.

15.     **All parties desiring to purchase must provide evidence of ability to close.**

16.     The Trustee may seek authority to accept a back-up bidder, as well.

17.     The Trustee shall review all bids received and, on the basis of such factors as the Trustee may determine in his sole discretion, after consultation (if appropriate) with secured lenders and other parties in interests without limitation, the Lien Holder's approval of a bid, the financial and contractual terms of each bid and factors concerning the speed, certainty of consummation of the transactions contemplated by each bid, identify the highest and otherwise best offer for the Property.

18.     Lien Holders shall have the right to credit bid at auction, pursuant to 11 U.S.C. § 363(k), a maximum amount equal to the value or its debt. The Lien Holders must pay all expenses of sale, including the realtor fees, closing costs and the payment of all superior liens including all *ad valorem* taxes owed as of the date of closing.

## SALE FREE AND CLEAR

19.     The sale of the Property shall be deemed free and clear of liens pursuant to 11 U.S.C. §363(f). The sale may be free and clear of the liens of the Lien Holders, which claim or are known to have a lien in the property subject to sale for the reasons described herein.

20. The Trustee will seek the affirmative consent of Comerica Bank and Old Harbor Village Condo Association to the sale of the Debtor's assets. The Trustee expects he may obtain the affirmative consent of the Lien Holders and, further, to the extent Lien Holders do not object to the sale, each has been deemed to have consented to the sale. *See, FutureSource LLC v. Reuters Ltd.*, C.A.7 (Ill.) 2002, 312 F.3d 281, certiorari denied 123 S.Ct. 1769, 538 U.S. 962, 155 L.Ed.2d 513; *see also, Veltman v. Whetzal*, 93 F.3d 517, 520 (8th Cir.1996); contra, *see In re Roberts*, 249 B.R. 152, 154-57 (Bankr.W.D.Mich.2000).

21. The Property may be sold free and clear of the claims of Lien Holders, pursuant to 11 U.S.C. § 363(f)(3). Pursuant to 11 U.S.C. § 506(a), the value of the Lien Holders' liens is limited to the value of its collateral. As the value of the collateral will be determined by the sale, and as each creditor had the right to credit bid, pursuant to credit bid, the Trustee may sell the Property, pursuant to 11 U.S.C. § 363(f)(3). (*See generally, In re Becker Indus., Inc.*, 63 B.R. 474 (Bankr. S.D.N.Y. 1986) and *In re Terrance Gardens park P'ship*, 96 B.R. 707 (Bankr. W.D. Tex. 1989).

22. Each of the Lien Holders could be compelled to accept a money satisfaction of their lien rights, such as this Chapter 11 Proceeding. As such, the Trustee may sell the Property, pursuant to 11 U.S.C. § 363(f)(5).

23. The Property may be sold free and clear of the claims of Van Buren County and the City of South Haven 11 U.S.C. § 363(f)(3), as each will be paid in full from the sale for any *ad valorem* taxes owed.

24. The Property may be sold free and clear of the claims of the Lien Holders, pursuant to 11 U.S.C. § 363(f)(2)(3)&(5).

25. To the extent a party other than the Lien Holders claims a lien in the Property,

such claim would be in *bona fide* dispute and, as such, the Trustee may sell the Property, free and clear of said liens pursuant to 11 U.S.C. § 363(f)(4).

26. The sale should be deemed free and clear of liens pursuant to 11 U.S.C. §363(f), with the Purchaser taking the estate's interest in the Property being sold free and clear of any liens and encumbrances with such liens and encumbrances attaching to the sale proceeds in the same rank, validity and priority as existed as of the date of the Petition.

## CONCLUSION

27. The auction process is expected to begin immediately so that Purchaser will have sufficient time to prepare for the summer season and to begin work immediately to obtain a liquor license. As such, the Trustee submits that it is appropriate to waive the provisions of Federal Rules of Bankruptcy Rule 6004(h).

28. The sale of the Property pursuant to this Motion is in the best interests of the estate and its creditors.

**WHEREFORE**, your Trustee prays:

A. That this Court enter an Order authorizing the sale of the Property on the terms and conditions set forth herein.

B. That the Court enter an Order authorizing the sale of the Property free and clear of liens pursuant to 11 U.S.C. §363(f) with all liens attaching to proceeds.

C. That the Trustee be authorized to execute a Trustee's Deed and/or Trustee's Bill of Sale in conformance with the terms herein.

D. That the Trustee be authorized to pay the realtor (once appointed) pursuant to this Motion and to pay such other appropriate and necessary expenses of sale including all applicable real estate taxes without further order of this Court.

E.      Authorize the Trustee to accept a back-up bidder.

F.      That this Court order such other relief as it finds just and equitable.

**RAYMAN & KNIGHT**
Attorneys for Trustee

Dated: March 12, 2015

By: /s/ Cody H. Knight
Cody H. Knight (P64811)

BUSINESS ADDRESS:
141 E. Michigan Avenue, Suite 301
Kalamazoo, MI 49007
Telephone: (269) 345-5156

EXHIBIT

A

# AGREEMENT FOR PURCHASE AND SALE OF REAL ESTATE AND BUSINESS ASSETS

THIS AGREEMENT is made this ninth day of March, 2015, between YORK ENTERPRISES, L.L.C., a Michigan limited liability company of 515 Williams Street, South Haven, MI 49090, as "Seller", and CASA NIRVANA, LLC, a Michigan limited liability company, of 7290 Eastlane, Jenison, Michigan 49428, as "Buyer."

IN CONSIDERATION OF THE MUTUAL COVENANTS CONTAINED IN THIS AGREEMENT, THE PARTIES AGREE AS FOLLOWS:

1. <u>Real Property</u>. Seller agrees to sell and Buyer (or an entity created by Buyer) agrees to purchase the real property, building, improvements and appurtenances known as the "Channel Bar" and described as Units 21 and 22 of 515 Williams, South Haven, Michigan 49090, of Van Buren County, Michigan, more particularly described as: Permanent Parcels #80-53-775-007-20 and #80-53-775-007-011 and Unit 60 of the Old Harbor Inn Hotel also located at 515 Williams, South Haven, MI 49090 and more particularly described as: Permanent Parcel # 80-53-775-011-00 (the "Real Property").

2. <u>Personal Property</u>. Also included in this sale at no additional cost to Buyer are the following items located on or used in connection with the Real Property (the "Personal Property"):
   (a) furniture and fixtures of the Channel Bar
   (b) all bar and kitchen equipment located in the Channel Bar
   (c) all glassware, utensils, and other items used in the operation of the Channel Bar
   (d) all inventory (excluding alcoholic inventory) located at the Channel Bar
   (e) the name "The Channel Bar" and "The Channel Wine Bar"
   (f) furniture and fixtures located in Old Harbor Inn Hotel, Unit #60

The Personal Property shall be transferred to Buyer at the closing by a bill of sale containing a full warranty of title (the "Bill of Sale").

3. <u>Purchase Price</u>. The purchase price for the Real Property and Personal Property is Two Hundred Twenty-Two Thousand Dollars ($222,000.00).

4. <u>Payment of Purchase Price</u>. The purchase price shall be paid as follows:

Page 1 of 8

(a)  **Earnest Money.**  Buyer has deposited with Seller the sum of Eight Thousand Dollars ($8,000.00) as evidence of Buyer's good faith to be held by *Shores Real Estate*, as the title company conducting the closing and applied to the purchase price at closing. In the event that this transaction does not close for any reason other that the default of Buyer, then said earnest money shall be immediately refunded to Buyer without further liability to Seller. If Buyer defaults in the performance of this Agreement, Seller's exclusive remedy shall be to accept said earnest money as stipulated damages for Buyer's default.

(b)  The balance of the purchase price of Two Hundred Fourteen Thousand Dollars ($214,000.00) shall be paid by Buyer at the closing in cash or by cashier's check, bank money order or wire transfer.

5.  **Taxes.**  Seller shall assume and pay all real estate and personal property taxes ("Taxes") on the Real Property and Personal Property which are billed or become due and payable or a lien on the Real Property and Personal Property on or before the date of closing and all outstanding special assessments which have been levied or assessed or which are a lien against the Real Property and Personal Property as of the date of closing whether due or not. In addition, all Taxes coming due and payable during 2015 shall be prorated between Buyer and Seller as of the closing date. If the precise amount of such Taxes is not known as of the closing date, such Taxes shall be estimated based upon the best available information. All other Taxes and special assessments on the Real Property and Personal Property shall be paid by Buyer.

6.  **Marketability.**  Marketable title to the Real Property and the Personal Property shall be in Seller's name free and clear from all liens, encumbrances, security interests, easements, restrictions, and zoning ordinance regulations, except those which in Buyer's opinion will not interfere with Buyer's intended use of such property. No tax liens of any nature whatsoever shall exist against the Real Property or Seller.

Seller represents that no work or materials have been supplied to or incorporated into the Real Property which could give rise to a lien of any kind within Ninety (90) days prior to the date of this Agreement, and that no such work or materials will be supplied to or incorporated into the Real Property prior to closing.

Seller shall provide Buyer with the results of a UCC search showing all Personal Property free and clear of all liens, encumbrances, security interests, and restrictions. The Buyer understands that Seller is under Chapter 7 protection of the United States Bankruptcy Code. Prior to the Closing, Seller shall provide Buyer with proof that Seller is able to sell both the Real Property and Personal Property without restriction from the United States Bankruptcy Court.

7. **Physical Inspection of Real Property and Personal Property.** Buyer shall have the right to fully inspect the Real Property and Personal Property to determine their physical characteristics and suitability for the use proposed by Buyer. For this purpose, Buyer may have soil borings made on the Real Property and conduct such additional engineering studies and tests on the Real Property as may be deemed reasonable by Buyer. Buyer's obligation to close this transaction is expressly made contingent upon Buyer's satisfaction with his inspection findings. Buyer shall be responsible for all costs associated with such inspections (except environmental costs discussed in Section 8 below).

8. **Environmental Audit.** An environmental audit, satisfactory to Buyer, of the Real Property may be conducted at Seller's expense by a consultant approved by Buyer and Seller on terms acceptable to Buyer. With regard to such audit, it is agreed as follows:

(a) Buyer's environmental consultant may enter the Seller's Real Property to conduct a Phase I ASTM environmental audit of the Real Property (the detail, scope and nature of which shall be agreed on by the parties).

(b) After completion of the Phase I environmental audit, the consultant shall prepare a draft report stating the conclusions reached in the audit and shall deliver copies of the report to the parties. Neither party shall release the contents of the report in full or in part without the prior written consent of the other party. However, Buyer may furnish a copy of the report to any proposed lender, to a consultant engaged in or commenting on the results of the study, to legal counsel, or to any other party if required by valid legal process.

(c) The final Phase I environmental audit shall be prepared and issued only after both Buyer and Seller have reviewed the draft report or reports and have agreed on the comments and proposed changes to the drafts. Seller shall be responsible for determining whether any legal responsibility exists to inform any person or entity of the condition of the Real Property as disclosed in the audit. Buyer agrees that no Phase II will be conducted without Seller's prior consent. In the event Phase II activities are recommended in the final Phase I environmental audit report, Seller shall determine whether to engage in such Phase II activities which, if conducted, shall be at Seller's expense. In the event Seller declines to conduct the Phase II activities, Buyer may terminate this Agreement.

(d) Buyer's obligation to close the transaction contemplated by this Agreement is expressly made contingent upon Buyer's satisfaction with any report or audit issued pursuant to this Section.

(e) If Buyer elects not to close this transaction as provided in this Agreement, all

copies of the Phase 1 report shall be delivered to and become the property of Seller. Buyer shall not thereafter disclose to any party the contents of the report in full or in part, except pursuant to valid legal process or with the prior written consent of Seller, which may be granted or withheld in Seller's sole discretion. If a demand is made on Buyer for any such disclosure pursuant to any legal process, Buyer shall immediately notify Seller.

9. **Transfer of Property**. At the closing, Seller shall deliver to Buyer each of the following:

(a) A warranty deed, duly executed and in recordable form, conveying the Real Property to Buyer, Real only to the matters referred to in Paragraph 6, above. The warranty deed shall not disclose the selling price but an affidavit shall be filed with the county for purposes of determining all state and county transfer taxes on the warranty deed.

(b) The Bill of Sale of the Personal Property.

(c) An assignment, in form satisfactory to Buyer, of all rights and claims Seller may have against any third party in connection the construction, installation, improvement, maintenance or repair of the Real Property or Personal Property.

10. **Title Insurance; UCC Search**. At the closing, Seller shall furnish Buyer, at Buyer's expense, a standard ALTA owner's title insurance policy, without exceptions, covering the Real Property in the amount of the purchase price. The commitment for such title insurance policy shall be delivered to Buyer within Fifteen (15) days after the date of this Agreement. In addition, Seller shall deliver to Buyer prior to closing Uniform Commercial Code Financing Statement searches (state and local), dated not more than Ten (10) days prior to closing. All financing statements, security interests and liens shown on the UCC searches which affect the Real Property or the Personal Property shall be discharged and terminated prior to closing.

11. **Date and Place of Closing**. This transaction for the purchase and sale of the Real Property and Personal Property shall be closed at the offices of the title insurance company providing the title insurance policy for this transaction, or such other place as the parties shall mutually agree, within Ten (10) days after all conditions to closing set forth in this Agreement have been satisfied or waived and Buyer provides Seller with written notice of his intent to close. However, in no event shall the closing occur later than March 31, 2015, unless extended by Buyer, at its election, for a period of up to Thirty (30) days in order to satisfy any of Seller's obligations under this Agreement which have not been satisfied. The closing for this Agreement is specifically contingent upon Buyer's satisfaction of the condition of the Real Property and Personal Property determined by Sections 6,7,8,10,13,14, and 16.

12. **Possession**. Possession of the Real Property and Personal Property shall be given to

Buyer at the closing; provided, however, Buyer shall have reasonable access to the Real Property and Personal Property prior to closing for purposes of inspection as provided in Paragraph 7, above.

13. **Survey and Engineering Drawings and Reports.** Buyer shall have the right to obtain, at Buyer's expense, a survey of the Real Property certified to Buyer, showing all improvements, easements and encroachments and prepared in accordance with the minimum standard detail requirements for land title surveys jointly established and adopted by the ALTA and the ACSM. Buyer's obligation to close this transaction is expressly made contingent upon its satisfaction with the information disclosed by the survey. In addition, Seller shall provide Buyer with copies of all architectural and engineering drawings, reports and related data which Seller has in its possession concerning the Real Property.

14. **Unpermitted Exceptions or Defects.** Within Fifteen (15) days after the delivery of both the title commitment and the survey referred to in Paragraphs 10 and 13, above, Buyer shall notify Seller of any unpermitted title exceptions or survey defects. Seller shall have until the closing date to cure the title exceptions or defects to Buyer's satisfaction. Upon Seller's failure to cure any such exception or defect, Buyer may, in addition to any other remedies, cause some or all of such exceptions or defects to be cured and deduct the cost of doing so from the purchase price or elect to terminate this Agreement.

15. **Closing Costs.** Seller shall be responsible for all state and county transfer taxes on the warranty deed. The parties agree to equally split the cost of the title company's closing fee. Buyer shall be responsible for all financing costs and obtaining any and all government permits or zoning changes required by Buyer to conduct its business at the Real Property. Buyer shall be solely responsible for all costs of obtaining a liquor license from the Michigan Liquor Control Commission.

16. **Representations and Warranties of Seller.** In addition to any other representations and warranties contained in this Agreement, Seller makes the following representations and warranties, each of which shall be true both as of the date of this Agreement and as of the date of closing, and each of which shall survive the closing:

    (a)    No hazardous substances or waste products or materials of any type or nature have been used, located, generated, stored or disposed of on the Real Property and Seller has provided Buyer all prior Phase I, Phase II, and other environmental reports regarding the Real Property.

    (b)    There are no asbestos containing materials or underground storage tanks located on the Real Property.

    (c)    The Real Property is in compliance with all applicable zoning, building, public

health and environmental laws and regulations and all other laws and regulations of governmental authorities having jurisdiction over the Real Property.

(d) There are no pending or proposed special assessment affecting or which may affect the Real Property or any part of the Real Property.

(e) There are no agreements of sale other than this Agreement, options or other rights of third parties, to acquire the Real Property, no unrecorded easement, lease, claim, restriction, covenant, agreement, or encumbrance affecting all or any portion of the Real Property, nor any other agreements which would otherwise affect the Real Property.

(f) Seller has the sole power to execute, deliver and carry out the terms and provisions of this Agreement, and has taken all necessary action to authorize the execution, delivery, and performance of this Agreement, and this Agreement constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms. Seller shall, within Five (5) days after the date of this Agreement, provide Buyer with a certified resolution from all of Seller's Members authorizing the execution, delivery and performance of this Agreement.

(g) There are no actions, suits or proceedings which have been threatened or instituted against or which affect the Real Property, at law or in equity, or before any federal, state or municipal governmental commissions, board, bureau, agency, or instrumentality which may affect the value, occupancy, or use of the Real Property. Seller will give Buyer prompt written notice of any such action, suit or proceeding of which it obtains knowledge subsequent to the date of this Agreement and prior to the closing, to the extent Seller acquires such knowledge.

(h) All the fixtures and mechanical systems located in the building, including, but not limited to, the electrical, plumbing, and HVAC systems, are in good operating condition and are in a good state of maintenance and repair and the foundation, roof and other structural components of the building are in good condition and in a good state of maintenance and repair. Seller shall not make or allow to occur any material change to, or deterioration of, the physical condition of the Real Property or the Personal Property, or any part thereof, which has not been corrected as of the date of closing.

(i) Seller's United State taxpayer identification number is as follows: _____. Seller is not a "foreign person" as defined in Internal Revenue Code Section 1445 (and the regulations thereunder). At the time of closing, Seller will sign an affidavit so stating to the satisfaction of Buyer, and also stating that (i) Seller is a U.S. partnership and is not a foreign person; (ii) Seller is neither owned nor controlled by foreign persons; (iii) Seller intends to file a U.S. tax return with respect to the sale of the Real Property; and (iv) Buyer has permission to file

a copy of such affidavit with the Internal Revenue Service.

17. **Non-Assumption of Obligations.** Buyer shall not, by his purchase of the Real Property and Personal Property, be deemed to have assumed any debts, obligations or liabilities of Seller and, unless otherwise agreed in writing, Buyer shall not assume any of Seller's contracts or agreements covering the operation or maintenance of the Real Property and/or Personal Property.

18. **Seller's Indemnities.** Seller shall indemnify, defend and hold Buyer harmless from any and all damages, claims, charges, costs and expenses, including actual attorneys' fees, incurred as the result of any of the following:

    (a)    The failure of any of the representations and warranties contained in this Agreement to be true and accurate in all respects;

    (b)    The failure of Seller to perform any of its obligations under this Agreement; and

    (c)    Any and all debts, obligations and liabilities of Seller whether accrued, absolute, contingent or otherwise existing on the date of closing relative to the Real Property.

19. **Assignment and Enforceability.** Except as otherwise expressly provided, this Agreement shall inure to the benefit of, be binding upon, and be specifically enforceable by Seller and Buyer, and their respective successors and assigns. This Agreement (or any part of it) shall be assignable by Buyer in his discretion.

20. **Entire Agreement.** This Agreement contains all of the representations and statements by each party to the other and expresses the entire understanding between the parties with respect to this transaction. All prior communications concerning this transaction are merged in and replaced by this Agreement.

21. **Notices.** All notices required under this Agreement shall be in writing and either delivered personally or mailed by certified mail, return receipt requested to the party to be notified at the addresses set forth above or such other address as the party shall have indicated by notice to the other party. Any mailed notice shall be deemed effective upon mailing.

22. **Commission.** The parties acknowledge that Seller has retained the services of Jim Marcoux of Caldwell Banker as its Selling Agent. Buyer has retained the services of Daniel Way of Shores Real Estate as its Buying Agent. Upon the completion of closing, Seller shall pay all brokerage commissions due from the sale of the Real Property and Personal Property, and shall hold Buyer harmless from any and all claims by brokers and any other persons for a commission in connection with

the purchase and sale of the Real Property and Personal Property.

WITNESSES:

*[signature]*

SELLER:
YORK ENTERPRISES, L.L.C.

By: *[signature]*
~~Frank York~~ Stephen L. Langeland
~~Its: Member~~ Trustee

BUYER:
CASA NIRVANA, LLC

By: *[signature]* 3/9/15
Brad Carrier
Its: Member

Page 8 of 8

SLL 3-11-15   BDC 3/9/15

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

York Enterprises, LLC

Debtor.
_____/

Case No.: 14-00628
Chapter 11 -- Filed: 2/06/2014
Converted -- Chapter 7: 11/13/2014

## ADDENDUM TO REAL ESTATE SALES CONTRACT BETWEEN:

SELLER:    Stephen L. Langeland, Trustee in Bankruptcy for
           York Enterprises, LLC; Case No. 14-00628

PURCHASER: Casa Nirvana, LLC

Notwithstanding the printed provisions in the attached Real Estate Contract, the sale of the property and the Trustee's obligation with respect to the payment of commissions are subject to the following terms and conditions:

1. Approval of the sale and the entry of an Order Confirming Sale by the United States Bankruptcy Court for the Western District of Michigan within 30-60 days of acceptance.

2. Title to the property will be transferred by the Trustee's execution of a "Trustee's Deed."

3. The sale of the property, including improvements and fixtures hereto or located thereon, shall be made on an "AS IS, WHERE IS" basis as of the date of the Order Confirming Sale, without representation or warranty, express or implied, of any kind, nature or description, or of merchantability, habitability, use, ability or if fitness for any purpose. The Trustee shall not be required to inspect or test or report on the condition of the property, or the operability of the property, or the existence of any possible defects in the property.

4. The sale of the real estate shall be free and clear of the lien, claims, encumbrances, and/or interest of any creditor and/or interest attaching to the sale proceeds and the Bankruptcy Court's Order Confirming Sale shall operate as a discharge of same.

5. Since all liens and encumbrances will be discharged, the Trustee shall have no obligation to furnish either an abstract of title or title insurance for the described real estate.

of 2

6. All taxes which are a lien on the described property shall be paid as directed by the Bankruptcy Court. Any tax which becomes a lien on the property after the date of the Order Confirming Sale shall be paid by the purchaser.

7. The sale shall be subject to competitive bidding.

8. The Trustee reserves the right to recommend rejection of this offer to the Court if it later proves insufficient to yield a reasonable net recovery to the estate, or if a higher bid is received at the hearing on confirmation of the sale.

9. If a bid is received and accepted, which is contingent upon obtaining financing, and the buyer elects to obtain Bankruptcy Court approval while waiting for loan approval, the buyer shall be required to post a $1,000.00 non-transferable deposit in order to defray the costs of obtaining Court approval of the sale. The deposit will be applied against the total purchase price, but will otherwise be forfeited if the buyer fails to complete the sale for any reason other than confirmation of a sale to a higher bidder.

Dated: 3/9/15

_____
Brad Carrier, Member of Casa Nirvana, LLC Buyer:

Dated: 3-11-15

_____
Stephen L. Langeland (P32583) on behalf of Seller: Stephen L. Langeland, Trustee and not in his individual capacity.

of 2